[Nos. 1960 and 1961]

EUGENE SCHULER, RESPONDENT, *v.* MAMIE L. GOLDEN, EXECUTRIX OF THE ESTATE OF FRANK GOLDEN, DECEASED, APPELLANT.

[142 Pac. 221]

1. CONTRACTS—BUILDING CONTRACTS—RESCISSION.

A building contractor, on a dispute arising over a partial payment by the owner, notified the owner that he had "forfeited" the contract for failure to make the payment, and stated that the contractor might decide to cancel the contract. The contractor remained in charge of the work until completion. A large portion of the work had been subcontracted for before the dispute, but the subcontractors never released the contractor. The owner posted a notice on the building that he was not responsible for any debts made by the contractor, and declared that the contract was forfeited. The contractor posted a notice that the owner had defaulted in payments and that the building was being completed by subcontractors, who would hold the property for their claims. Letters passing between the parties contained misstatements which did not relate to any material matter. The owner incurred expenses in the construction of the building by exercising rights under the contract and in settling with subcontractors. *Held*, that the contract was not rescinded, and the contractor could enforce his rights thereunder.

2. DAMAGES—BUILDING CONTRACTS—BREACH—EXPENSES.

A building contractor who is responsible under the contract for damages occasioned by the construction of an extra story is liable to the owner for an amount he was compelled to pay a tenant for damages occasioned by a defective roof put on by the contractor.

APPEAL from the Second Judicial District Court, Washoe County; *W. H. A. Pike*, Judge.

Action by Eugene Schuler against Frank Golden, revived after the death of defendant pending an appeal against Mamie L. Golden, executrix. From a judgment for plaintiff, defendant appeals. **Modified and affirmed.**

*L. A. Gibbons* and *Fred B. Hart,* for Appellant.

*Cheney, Downer, Price & Hawkins,* and *Cole L. Harwood,* for Respondent.

*Per Curiam:*

This is a suit to foreclose a mechanic's lien. From a judgment in favor of plaintiff and from an order denying a motion for a new trial, defendant appeals. On the 21st day of November, 1906, an agreement in writing was entered into between the Northwestern Construction Company, a corporation, and Frank Golden, since deceased, whereby the said construction company agreed to construct for the said Golden a fourth-story addition to that certain building in the city of Reno known as the Hotel Golden, and comprising what is known as the "Nevada Block," and to construct a four-story annex to such building in accordance with certain plans and specifications furnished by Holesworth, Curtis & Co., the supervising architects of the building. The agreed price for such work was $57,099, to be paid for in seven installments. It was provided that the first installment of $7,500 should be paid when the north wing is four stories high and ready for ceiling joist. The second installment of $7,500 was to be paid when the brick work for the fourth-story addition and annex are completed. The contract further provided that the said Golden could furnish to the said construction company certain lumber to be used in the construction work, which was to be paid for by the construction company according to a certain schedule of prices set out in the contract. It was further provided that Golden could require alterations and additions during the progress of the building. Included in the contract was the installation of a passenger elevator, but it was also provided that Golden reserved the right, which he

subsequently exercised, to install the elevator himself, in which event the sum of $4,150 was to be deducted from the original contract price for construction.

The contract also contained the following provisions: "The party of the first part agrees to be responsible for all damages that may happen to the building now known as the Hotel Golden, or Nevada Block, when the same shall be occasioned by the construction of the said addition or of the said annex. That in case of the failure of the party of the first part to have the said building fully completed and ready for occupancy the party of the second part, at the time herein specified, to wit, on the 15th day of March, A. D. 1907, the said party of the first part shall be held liable to the party of the second part in the penal sum of twenty-five (25) dollars per day for each and every day after the said 15th day of March, A. D. 1907, and the said sum of twenty-five (25) dollars per day is hereby fixed and agreed as full, fixed, and liquidated damages for the detention of the delivery of the said building, unless such delay shall be the result of unavoidable accidents or delays, or the acts of God."

The second payment mentioned in the contract came due on the 10th day of April, 1907. Upon notice to Golden by the construction company that such payment was due, Golden deposited in the Farmers' and Merchants' Bank the sum of $3,900.63, and presented to the contractor a bill for lumber furnished in the amount of $3,599.37 as a full settlement of the second payment. A dispute arose between Golden and the construction company relative to the sufficiency of this proposed settlement of the second installment to meet the terms of the contract. It was claimed by the construction company that the lumber account was to be adjusted at the time of the final payment, and also that it had not received the full amount of lumber mentioned in the bill. The construction company, through its agent and representative, Eugene Schuler, notified Golden that he had forfeited his contract.

On the 7th day of May, 1907, the construction company sent a letter to Golden reading as follows: "We hereby

confirm the action of our Mr. E. Schuler, declaring your contract forfeited. You have defaulted payment on the same, and we may decide to cancel the same and demand a full settlement of you in the same at any time. We have notified all bondsmen that they are released and asked them to withdraw. We hereby notify you that we will not be responsible for any subcontractors' liens that may go on to the property."

On the 20th day of May, 1907, a letter was sent to Golden signed by the Northwestern Construction Company, written by E. Schuler, and in part reading as follows: "In pursuance to letter from the company to you dated May 7, 1907, confirming my action declaring your contract forfeited owing to you defaulting payment on the same in this letter they also advise you they would not be responsible for subcontractors' liens, therefore herewith give you partial list with approximate amounts due the subcontractors on the Golden Hotel Building, and you will pay them as they become due and attested correct by us, thereby save the expense and attorney's fees for liens from them or either of them as they become due. We have notified them nothing more would be paid by us owing to can. of cont."

Then follows a list of names of subcontractors with amounts opposite, aggregating $56,804. The letter then continued: "You are hereby notified to call at our office, * * * check up all matters and take care of them together with bal. due us; also look after insurance hereafter on the said building. Yours truly, Northwestern Construction Co. P. S.—E. Schuler has subcontract of your building for $55,000.00."

Thereafter, and on the 23d day of May, 1907, Golden posted on the building notices reading as follows:
"To whom it May Concern:

"Notice is hereby given that the undersigned, Frank Golden, owner of these premises and building, will not be responsible for any debts, charges, contracts, or other agreements entered into by the Northwestern

Construction Company, with reference to any work, labor, materials, or supplies furnished for the alteration and construction of this building, unless first approved by me.

"Notice is further given that the said Northwestern Construction Company has abandoned contract for the construction and alteration of this building, and the undersigned has declared their contract forfeited.

"Dated at Reno, Nevada, this 23rd day of May, A. D. 1907."

Over the above-posted notices by Golden, E. Schuler posted other notices reading as follows:

"Notice.

"May 23, 1907.

" _____ having defaulted payment on his contract April 10, 1907, this building is being completed by the subcontractors, who will hold the building and real estate for the full amount of their claims and also the proprietors of these premises.

"The building is in possession of the subcontractors, and trespassers are hereby notified to keep out.

"Subcontractors, by E. Schuler."

Several of these notices appear to have been posted, varying somewhat in language, one reading as follows:

"Notice.

"May 23, 1907.

" _____ Having defaulted payment to the Northwestern Construction Co. April 10, 1907, this building is being completed by the subcontractors, who will hold this property and the owners for the full amount of their claims. 'See.'

"Dated May 23, 1907.

"By order of the Subcontractors."

Another notice read as follows:

"Notice.

"May 23, 1907.

" _____having defaulted payment to the Northwestern Construction Co. April 10, 1907, giving us right to cancel

286   SCHULER *v.* GOLDEN   [37th Nev.

Opinion of the Court

contract. The building ·is being completed by us and subcontractors; we will hold this property and owners thereof for full amount of claims.

"Northwestern Construction Co.,
"and its Subcontractors.
"ES"

Where appears the blank line in the above copies, there was cut out a slit, and the notices were so posted that the name "Frank Golden," as it appeared in the notices posted by him, showed through the slit. From time to time it appears that these notices were torn down by unknown parties.

On the ___ day of May, 1907, the following letter was sent to Golden by certain of the bondsmen on the bond of the construction company:

"Frank Golden, Esq., Reno, Nevada.

"Principal in Contract with Northwestern Construction.
"County of Washoe—ss.:

"Take another notice.

"You will again (once more) take notice.

"That we and each of us have not been bound since April 10, 1907, upon bond of Northwestern Construction Co., for the rebuilding of what is known as the Hotel Golden, for· the reason that you (Frank Golden) have broken and forfeited your contract with the Northwestern Construction Co. in many ways and by defaulting payment on the same the 10th day of April, 1907.

"Now, therefore, you are hereby notified that the building is being completed by the 'subcontractors' as fast as it can be done, considering delay caused· by you which has by this time been over five months, and we shall look to you to straighten out such matters so there may be no further unnecessary delay, and you are further notified to pay all subcontractors' claims when they are due and attested correct by E. Schuler, pres. of the Northwestern Construction Company, and that we will not be responsible for any claims and subcontractors' liens.

"And you are further notified that the said building

operations are delayed by you and you only entirely at your own risk and peril and that we will not be responsible for any matters connected therewith.

"Dated at Reno, this ___ day of May, A. D. 1907.

"Eugene Schuler<br>
"A. F. Neidt<br>
"A. Spencer."

On the 17th day of September, 1907, a communication was sent by Golden, through his attorney, to the Northwestern Construction Company and its bondsmen informing them that Golden would hold them responsible on the bond for all delay in the completion of the building after the 15th day of March, 1907, as specified in the building contract. To this communication a reply was sent by the construction company, to which the names of the bondsmen were added, in part reading:

" 'You,' and each of you, are once more notified that Frank Golden defaulted payments and broke his contract in divers other ways with the Northwestern Construction and others in many ways, and particularly in not making his payments expressly provided for in the contract thereby forfeiting his rights under the same and the Co., the Northwestern Construction Co., were at liberty to cancel the same at any time had they desired to do so, of which fact you have been advised before; but instead they are completing your building as fast as it can be done, and if you will do your part the building will be finished some time soon."

On the 23d or 24th day of May, 1907, Golden purchased a number of claims of subcontractors against the construction company totaling the sum of $4,110.70, and had assignments of such claims made to William Woodburn, Jr., and caused a suit against the construction company to be instituted by said Woodburn for the amount of such assigned claims, and in such suit attached money belonging to the construction company on deposit in certain banks in Reno. During the trial it was stipulated that Golden was the actual owner of these assigned claims,

and that, in the event the court rendered judgment in favor of the plaintiff, Golden should have credit for the amount involved in the Woodburn suit. During the trial Woodburn assigned the claims to Golden, the suit was dismissed, and the amount credited in the judgment entered as a part payment on the contract. Prior to the trial Golden had purchased a number of other similar claims or paid subcontractors in whole or in part, and the amount of such payments was likewise credited on the amount found to be due on the contract.

Numerous letters and writings passed between Schuler or the construction company and Golden, other than those above mentioned, but they do not vary the situation as disclosed by those quoted, and need not be referred to.

Notwithstanding the various letters and communications between the parties, and the notices posted on the building, the construction company remained in possession of the property and completed the building.

With the exception of one or two extras amounting in excess of $1,000, contracted for after April 10 and before May 23, 1907, the construction company refused to contract for extra work, but required or permitted Golden to deal directly with subcontractors for the same. The building was finally accepted as completed in accordance with the contract by the supervising architects on January 21, 1908, and a written acknowledgment of the same issued to the construction company. Subsequently, and within sixty days thereafter, the construction company filed a lien upon the property to secure the balance claimed to be due by virtue of the contract. Subsequently, and prior to suit to foreclose the lien, the Northwestern Construction Company assigned their claims of lien to the respondent, Eugene Schuler.

Subsequent to the appeal in this case the defendant and appellant, Frank Golden, died, and Mamie L. Golden, the duly appointed executrix under his last will, was substituted as defendant and appellant.

It is the contention of counsel for appellant that the

contract was terminated by mutual act and consent of the parties on May 23, 1907, and that the lien sued upon and based on the contract of November 21, 1906, was not filed in time and was void.

[1] The main question in this case turns on whether the contract was terminated by acts of the parties following the dispute over the payment of the second installment on the contract due April 10, 1907. The contention of counsel for appellant in this respect cannot, we think, be sustained. The construction company, through E. Schuler, notified Golden that he had "forfeited" his contract by reason of his failure to make the second payment according to the letter of the contract, but Schuler did not notify Golden that the company would not carry out the contract upon their part. Subsequently, by the letter of date May 7, the company notified Golden that it confirmed the action of Schuler "declaring your contract forfeited," and stated that the company "may decide to cancel the same." The record does not disclose anything warranting the conclusion that the construction company subsequently did decide to cancel the contract. It remained in charge of the building to the end and completed the same. True, a very great portion of the work on the building had been subcontracted before that time, but the subcontractors never released the original contractor. The carpentry work was not subcontracted, and this was completed directly by the construction company. Subsequent to the dispute over the second payment, and up to December, 1907, the testimony shows that the construction company had paid out for labor $3,363.25, of which amount $900.78 was for carpenter's work. Some payments were also made by the construction company to subcontractors subsequent to that time.

The notice posted by Golden May 23, and the counter notices posted by the construction company of the same date, quoted *supra*, do not amount to a mutual rescission of the contract. The construction company had performed no act up to that time authorizing Golden to

"declare their contract forfeited." The notices posted by Schuler purporting to be signed only by the subcontractors could not be binding on the original contractors. The one notice written and posted by Schuler and signed "Northwestern Construction Co. and Its Subcontractors, ES," stated "the building is being completed by us and subcontractors."

Numerous communications passed between the construction company and Schuler, its representative, upon the one hand, and Golden and his attorneys, upon the other. Some of the letters written, or caused to be written, by Schuler contained statements which Schuler admitted upon the trial were not the fact. For example, he testified the company did not notify the subcontractors it would not pay them as stated in the letter of May 20, quoted *supra.* Such statements, he testified, were intended as "bluff" to induce Golden to make payments. None of these misstatements relate to any matter material. There may have been, as is claimed by counsel for respondent, a good deal of "bluff" upon both sides. The fact remains, however, that the construction company never claimed a rescission of the contract, but only a right to assert a rescission by reason of the alleged violation of the contract by Golden, an asserted right which it never acted upon. Upon the contrary, as before stated, the construction company remained in possession of the building and completed the same, and it was accepted by the supervising architects.

It is contended by counsel for appellant that the contract should be considered rescinded, for the reason that Golden "altered his legal position and assumed and ultimately paid obligations amounting to the sum of $40,000, which he was under no obligation to pay save for his action predicated upon and caused by the prior acts of the plaintiff." This contention, we think, is without merit. The amount stated includes the elevator contract, which Golden had the right to withdraw from the construction company and install himself, and some other amounts which he contracted for independently. In

settling with a number of the subcontractors he merely purchased their claims against the construction company, as in the case of the Woodburn assignments. Where he guaranteed payment to certain large subcontractors, the latter did not release the construction company from liability. In the meantime he was not meeting his payments as provided in his contract with the construction company, so that they could take care of legitimate claims against themselves.

The contention that the contract was rescinded is without substantial merit. (6 Cyc. 24.)

*Delays.* From March 15, 1907, when the contract was to be completed, until January 21, 1908, when the building was finally accepted, there was a delay of ten months and six days. The plaintiff, at the trial, undertook to account for this delay because of causes specified in the contract releasing the construction company from the agreed liquidated damages for delay. No delay is claimed by reason of the default in payments. Schuler testified that the basement wall which Golden was to construct and which was not part of the contract was not completed until in February, 1907, but just how much delay is claimed on this account does not appear. The evidence does not disclose when this wall should have been completed, and is conflicting as to whether any delay chargeable to Golden was occasioned thereby. A month's delay is attributable to the weather; a month because of failure to get lumber in time; a month because of changes in the character of roofing; three days because of certain plumbing alterations; two weeks (about) because of putting in gas pipes, not specifically mentioned in the contract; two weeks because of changes in the electric wiring; five days on account of Golden's tenant in the building; a month and a half on account of installing a boiler for the heating apparatus. In reference to delays caused by other changes no definite time is given or approximated; "more time than one would think" is the answer to this question. A delay of a month and ten days is claimed for delay in the final inspection

of the supervising architect. Why, with reasonable diligence, much of this latter delay could not have been avoided does not appear. The proofs in excuse for so much delay are in many respects unsatisfactory. For instance, while extra time was consumed in installing the boiler, it does not appear that other work was delayed on this account. Delays occasioned by weather conditions and lack of materials, except under extraordinary conditions, are not usually regarded as excuses for delays.

The lower court found the delays to be excusable, but we are of opinion that sixty days at least are not shown to have been excusable delays.

[2] *Damage to Golden's Tenant.* At the time of the construction of the annex and fourth story to the Golden Hotel building one Al North was tenant of the hotel under a lease from Golden. North had a claim for damages amounting to $1,073 because of injury to rooms in the hotel, carpets, etc., occasioned by leaks in the roof. This amount was paid by Golden pursuant to a letter, of date January 18, 1908, written by the construction company to Golden containing an itemized statement of the damages sustained by North, requesting payment by Golden. The letter also said: "Amount paid can be adjusted at final settlement for the building."

The proofs showed that the company put on a defective roof, which had to be repaired before the building was accepted. Schuler in his testimony claimed that the damage was due to a storm which occurred while there was a delay in putting on the roofing due to a change in the character of roofing made at Golden's request.

In the findings of the court below is the statement of fact: "He [meaning Frank Golden] also paid Al North for damages caused to furniture and for other items properly chargeable to said construction company the sum of $93."

How the court arrived at this charge of $93 we are unable to determine from the record, unless the court made a mistake in the figures. One item of the North claim, amounting to $453, occurred between August 3,

1907, and January 1, 1908, and could not be attributed to the change in roofing. We think Golden entitled to credit for the entire North claim.

Other items in the settlement made by the court are not questioned.

The judgment should be reduced by deducting therefrom the sum of $2,690, to wit, from $18,535.54 to $15,845.54, and there should be included therein the provision that of such amount the sum of $988.95, with its proportionate amount of accrued interest, be paid to the Nevada Planing Mills Company as mentioned in the findings of the court.

As so modified, the judgment is affirmed.

### ORDER ON MOTION TO MODIFY JUDGMENT

This cause coming on to be heard on the motion of the respondent to correct and make certain the judgment therein, and the same having been considered by the court, and good cause appearing therefor:

It is ordered and decreed that the judgment of the district court in this action be corrected and modified as follows:

That Mamie L. Golden, as executrix of the estate of Frank Golden, deceased, be substituted in the place of said Frank Golden as defendant and respondent in this action.

That from the sum of $15,312.69, found due by the district court from defendant to the plaintiff, there be deducted as found by this court the sum of $2,480, leaving the sum of $12,832.69 as the amount due on the contract. To this there should be added interest at 7 per cent from February 21, 1908, the date of filing the lien, to February 8, 1910, the date of the judgment, which amounts to $1,764.14, making the principal and interest to date of judgment $14,596.83. To this should be added attorneys' fees, $1,000, costs of filing lien, $8.45, costs of suit, $107.80, making a total of $15,713.08, and that $13,948.94 of the judgment should bear interest at 7 per cent per annum from February 8, 1910, until paid.

It is further ordered that of such amount the sum of $988.95, with interest at 7 per cent from February 21, 1908, be paid to the Nevada Planing Mills Company.

The district court is directed to modify its judgment and decree in this action accordingly, and, as so modified, said judgment is affirmed, and the remittitur to issue accordingly.

## ON PETITION FOR REHEARING

*Per Curiam:*

Petition denied.